In re Stephen F. KELLAS, Debra L. Kellas, Debtors.

**DONALD H. HARTVIG, INCORPORATED, an Oregon corporation, Plaintiff/Appellee,**

v.

**Stephen F. KELLAS, and Bankers Trust Company, Defendants.**

**and**

**US West, Inc., a Colorado corporation, Defendant/Appellant.**

In Re Michael KINCAID, and Sharon Kincaid, Debtors.

**Ronald A. WATSON, Plaintiff/Appellee,**

v.

**Michael KINCAID, and Bankers Trust Co., a foreign corporation, Defendants.**

**and**

**US West, Inc., a foreign corporation, Defendant/Appellant.**

Nos. 386–07097–S7, 385–05403–P7.

Adversary Nos. 87–0471–S, 87–0473–S.

No. 89–1375.

United States District Court, D. Oregon.

April 20, 1990.

Mildred J. Carmack, J. Stephen Werts, Schwabe, Williamson & Wyatt, Portland, Or., for defendant/appellant US West, Inc.

Alexander T. Bishop, Ronald A. Watson, Portland, Or., for plaintiffs/appellees Donald H. Hartvig, Inc., trustee and Ronald A. Watson, trustee.

## OPINION

PANNER, Chief Judge.

Appellant US West, Inc. (US West) brings this appeal from a final judgment of Bankruptcy Judge Donal D. Sullivan ordering it to pay the bankruptcy trustee the unrefunded portion of debtor Kincaid's and Kellas's pension plan accounts. This is an appeal from *In re Kellas*, 386–07097–S7, and *In re Kincaid*, 385–05403–P7, consolidated for trial by the Bankruptcy Court. This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).

I reverse the Bankruptcy Court's decision.

## FACTUAL BACKGROUND

On December 26, 1985, debtor Kincaid filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Ronald

A. Watson, appellee, was appointed trustee of the bankruptcy estate. On December 31, 1986, debtor Kellas filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Donald H. Hartvig, Inc., also an appellee, was appointed trustee of the bankruptcy estate.

US West, a Colorado corporation, is the debtors' employer. Both debtors established accounts in a pension plan created by US West (Plan), administered by a Contribution Plan Committee. The Plan qualifies as a pension plan under the regulations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 to 1461, and under § 401 of the Internal Revenue Code (IRC § 401).

Participation in the Plan is voluntary. To participate, an employee authorizes US West to place a portion of the employee's salary in a trust account, with the employee named as beneficiary. The contributions range from one to six percent of the salary, at the employee's option. The employee may authorize a supplemental contribution, but the total contribution may not exceed sixteen percent of the employee's salary. US West contributes an additional two-thirds of the amount authorized by the employee to the same account.

Contributions to the Plan are made in one of two ways. First, the employee may authorize a payroll deduction, which is an after-tax contribution into an account commonly known as a "401(a) account." Second, the employee may choose a pre-tax salary reduction. The amount of the salary reduction is placed into an account commonly referred to as a "401(k) account."

Before reaching age fifty-nine and one half, an employee may withdraw money placed in the Plan only in the event of death, disability, termination of employment, or severe financial hardship. An employee may take a hardship withdrawal only with the authorization of the Committee. The hardship must result from an unfortunate occurrence, such as accident or sickness, or loss of employee's residence due to accident, earthquake, fire, tornado, or flood. The amount of the withdrawal may not exceed the immediate financial need, and may not be used instead of funds otherwise reasonably available.

Section 18 of the Plan is an antialienation clause that limits the transfer of the beneficiary's interest. That interest cannot be taken by attachment, execution, levy, or other legal or equitable proceedings. This provision, by its terms, places the employee's interest in the 401(k) accounts beyond the reach of general creditors in nonbankruptcy proceedings. The Plan also contains a choice of Colorado law clause, to the extent such law has not been preempted by federal law.

Both Bankruptcy trustees filed a Complaint for Turn Over Order against the debtors, US West, and Bankers Trust Company, the trustee of the Plan. All parties stipulated to the facts and waived a trial. On June 20, 1989, the Bankruptcy Court held that US West and the Bankers Trust Company must turn over the balance of the debtors 401(k) and 401(a) accounts. US West challenges only the Order to Turn Over the funds in the 401(k) accounts.

## STANDARDS

### I. Standard of Review

This court must uphold the Bankruptcy Court's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed *de novo*. *Daniels–Head & Assoc. v. Mercer, Inc. (In re Daniels–Head & Assoc.)*, 819 F.2d 914, 918 (9th Cir.1987). Interpretations of state law are also reviewed *de novo*. *Churchill v. The F/V Fjord (In re McLinn)*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

### II. Exemptions from the Bankruptcy Estate

The bankruptcy estate includes all of debtor's property, unless specifically exempted. 11 U.S.C. § 541(a)(1). The bankruptcy estate does not include property on which there is a restriction on the transfer of the debtor's beneficial interest, enforceable under *applicable nonbankruptcy law*. 11 U.S.C. § 541(c)(2).

## III. Preemption under ERISA

Under § 514 of ERISA, the provisions of ERISA supersede all state laws as they relate to any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a). The term "state law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). Congress also provided that ERISA does not alter, amend, modify, invalidate, impair, or supersede any federal law. *Id.*

## IV. Antialienation Provisions in ERISA and IRC

To be ERISA qualified, "each pension plan shall provide that benefits provided under the plan may not be alienated or assigned." 29 U.S.C. § 1056(d)(1).

The IRC states that a pension plan will not qualify for tax benefits unless it prohibits alienation or assignment of benefits. 26 U.S.C. § 401(a)(13)(A). Qualified 401(k) or 401(a) plans may not be distributed to beneficiaries under age fifty-nine and one half, unless there is separation of service, disability, death, or financial hardship. *Id.* at § 401(k)(2)(B)(i).

## V. Oregon Choice of Law

Oregon follows the methodology of the Restatement (Second) of Conflict of Laws. *Lilienthal v. Kaufman,* 239 Or. 1, 395 P.2d 543 (1964). A contractual provision designating a particular state law refers to the substantive, local law of the chosen state, unless the parties deem otherwise. Restatement (Second) of Conflict of Laws, § 187(3) (1971). Forum law determines whether to give effect to the choice of law provision. *Id.*

Oregon law permits parties to choose the law to govern their contracts. *Sterrett v. Stoddard Lumber Co.,* 150 Or. 491, 46 P.2d 1023 (1935). The Oregon choice of law rule is that a contractual choice of law provision should be given effect, unless: (a) the chosen state has no substantial relationship to the parties or the transaction, and there is no reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. Restatement (Second) of Conflict of Laws, § 187(2).

## VI. Colorado Spendthrift Trust Law

Spendthrift trusts are valid in Colorado, and enforceable against creditors seeking to attach, levy, or execute claims against them. *Brasser v. Hutchison,* 37 Colo.App. 528, 549 P.2d 801 (1976). A valid spendthrift trust under Colorado law is one that:

1. Restrains the voluntary or involuntary transfer of the beneficiary's interest;

2. Does not name the settlor as beneficiary; and

3. Has severely limited the extent of dominion and control a beneficiary possesses over the trust corpus.

*In re Alagna,* 107 B.R. 301, 308 (Bankr.D. Colo.1989)

## DISCUSSION

■ When a transfer of the beneficial interest in a debtor's property is restricted by "applicable nonbankruptcy law", that property is not part of the bankruptcy estate. 11 U.S.C. § 541(c)(2). Therefore, the threshold issue is whether the term "applicable nonbankruptcy law" as used in § 541(c)(2) includes state law of spendthrift trusts, the ERISA and IRC antialienation provisions, or both.

The Bankruptcy Court held neither were included because § 541(c)(2) refers only to state spendthrift trust law, and not federal law, and state spendthrift trust law is preempted by ERISA. I do not agree that state spendthrift trust law is preempted by ERISA. However, I do agree with the Bankruptcy Court that § 541(c)(2)'s reference to "applicable nonbankruptcy law" does not include the ERISA or IRC antialienation provisions. Because I also find that Colorado spendthrift trust law is "applicable nonbankruptcy law" under § 541(c)(2), and exempts the 401(k) plans from the bankruptcy estate, I reverse.

### I. ERISA and IRC § 401 as § 541(c)(2) Exemptions

■ US West argues the pension funds were not part of the bankruptcy estate because the antialienation provisions in the Plan are the same as those in ERISA and IRC § 401. Both ERISA and the IRC are, US West argues, "applicable nonbankruptcy law" sufficient to exclude the 401(k) plans from the bankruptcy estate under § 541(c)(2). The Bankruptcy Court rejected this argument, and held "applicable nonbankruptcy law" does not include ERISA or IRC § 401, relying on *Daniel v. Security Pac. Nat'l Bank (In Re Daniel)*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986).

Based on an analysis of the legislative history of the Bankruptcy Code, several courts have held the phrase "applicable nonbankruptcy law" applies only to state laws concerning spendthrift trusts. *See Daniel*, 771 F.2d at 1359; *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir.1983). US West argues that *Mackey v. Lanier*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), overrules *Daniel* on this point. I disagree.

*Mackey* involved an action to garnish a Georgia employee welfare benefit plan that was ERISA-qualified. Georgia had enacted a statute that protected ERISA plans from garnishment, Ga.Code Ann. § 18–4–22.1. The statute referred specifically to ERISA qualified plans. The plan trustees argued the benefits were immune from garnishment under this statute. The creditors, seeking to garnish the funds, argued that ERISA preempted § 18–4–22.1, and that ERISA protected only pension plans, not welfare benefit plans. The Supreme Court agreed.

The trustees then argued that if § 18–4–22.1 was preempted by ERISA, then Georgia's general garnishment law itself was preempted so far as it applied to any ERISA qualified plan. The *Mackey* Court rejected this argument, holding that

Congress had chosen not to protect against alienation of *welfare* benefits when it specifically protected *pension* benefits:

> Where Congress intended in ERISA to preclude a particular method of state law enforcement or judgments, or extend antialienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 29 U.S.C. § 1056(d)(1) . . .

486 U.S. at 836, 108 S.Ct. at 2188 (emphasis in original).

> [T]here is no ignoring the fact that, when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* to ERISA welfare benefit plans . . .

*Id.* at 837, 108 S.Ct. at 2189 (emphasis in original).

US West argues that this dictum strongly implies the antialienation provisions of ERISA protect pension plan benefits, even in a bankruptcy proceeding. Therefore, US West reasons, *Daniel*'s holding that § 541(c)(2)'s reference to "applicable nonbankruptcy law" was intended to refer only to state spendthrift trust law and not to refer broadly to all other laws, including ERISA and IRC, is no longer valid.

The Bankruptcy Court rejected this argument on two grounds. First, even if US West is correct that *Mackey* impliedly overrules *Daniel*, it is not the role of the Bankruptcy Court to reverse the Ninth Circuit. *Daniel* remains good law until the Ninth Circuit or the Supreme Court overrule it. Dicta are not enough. Second, a Bankruptcy Appeals Panel rejected this argument. *Kaplan v. Primerit Bank (In re Kaplan)*, 97 B.R. 572 (9th Cir.B.A.P.1989). The *Kaplan* panel found *Daniel* and *Mackey* distinguishable on their facts, because *Mackey* involved the relationship between a state law and ERISA, and *Daniel* involved a

conflict between two federal laws, ERISA and bankruptcy.

These two arguments are persuasive. I reject US West's argument that § 541(c)(2)'s reference to "applicable non-bankruptcy law" includes provisions of ERISA and IRC § 401, and affirm the Bankruptcy Court's conclusion that *Daniel* survives *Mackey*. Therefore, the inquiry turns to whether any state law applies under § 541(c)(2).

## II. State Spendthrift Law as § 541(c)(2) Exemption

US West argues that the antialienation provisions of the Plan are valid under the spendthrift trust laws of both Oregon and Colorado, and therefore the 401(k) plans are not part of the bankruptcy estate under § 541(c)(2). The Bankruptcy Court rejected this argument. It held that both Colorado and Oregon state spendthrift trust law is preempted by § 1144(a), relying on *Mackey*. I disagree.

The *Mackey* Court held that § 1144(a) preempts state law insofar as the state law "relates to ERISA-qualified employee benefit plans" if the state law is connected or refers to ERISA. 486 U.S. at 830, 108 S.Ct. at 2186 (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983)). In *Mackey*, the Court relied on the fact that the state statute treated ERISA employee welfare benefit plans differently under the state garnishment procedures. Therefore, the statute's express reference to ERISA plans brought it within the reach of federal law preemption. 486 U.S. at 830, 108 S.Ct. at 2186.

Even though *Mackey* relied on an express reference to ERISA plans, the absence of an express reference does not necessarily mean the statute is not preempted. Rather, preemption is based on how closely the state statute relates to ERISA. *See, e.g., Shaw*, 463 U.S. at 96, 103 S.Ct. at 2899; *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 62, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987).

Here, the Bankruptcy Court concluded the Georgia statute struck down by the Supreme Court in *Mackey* was not significantly different from the common law governing spendthrift trusts. Although the substance of state spendthrift trust law may be similar to the Georgia statute, it lacks the close connection to ERISA that the *Mackey* Court found so critical to its holding.

The parties have not cited, and I have not found another case that agrees with the Bankruptcy Court's reading of *Mackey*. There are several that hold otherwise. *See, e.g., Siegel v. Swaine (In re Siegel)*, 105 B.R. 556, 560 (D.Ariz.1989); *Kaplan*, 97 B.R. at 576; *Watson v. Kincaid (In re Kincaid)*, 96 B.R. 1014, 1018 (Bankr. 9th Cir.1989) (relying on *Mackey*'s predecessor, *Pilot Life*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)); *In re Burns*, 108 B.R. 308, 312 (Bankr.W.D.Okla.1989); *Fogler v. Flindall (In re Flindall)*, 105 B.R. 32, 40 (Bankr.D.Ariz.1989).

I am also persuaded by the reasoning of the Bankruptcy Appeals Panel in *Kincaid*. The pension plan administrators in *Kincaid* argued ERISA preempted state spendthrift trust law. The panel rejected this argument, relying on § 1144(d)'s statement that ERISA does not interfere with federal law. While ERISA preempts state law, it does not invalidate federal law. In a bankruptcy proceeding, the court's use of state spendthrift trust law is not an application of state law to ERISA. Rather, the spendthrift trust law is seen as federal bankruptcy law relating to ERISA:

> [A]n examination of an ERISA plan under state spendthrift trust law as mandated by § 541(c)(2) is not an application of *state* law to an ERISA plan, but rather the application of *federal* bankruptcy law to an ERISA plan.

96 B.R. at 1018 (emphasis added).

The common law of spendthrift trusts lacks a sufficient connection to ERISA to warrant preemption under § 1144(a). I conclude that state spendthrift trust common law is not preempted by ERISA in a bankruptcy action.

III. The 401(k) Accounts as Valid Spendthrift Trusts under Colorado Law

Because I conclude that state spendthrift trust law is not preempted by § 1144(a), the inquiry turns to whether the 401(k) accounts are valid spendthrift trusts under applicable state law. The first question is what state law applies.

A. *Choice of Law*

█ The Plan's reference to Colorado law is limited to Colorado's substantive law of spendthrift trusts. Oregon law determines whether to give effect to the choice of law provision. The Bankruptcy Court held that Oregon conflicts of law rules would not enforce a choice of law provision against a trustee representing non-consenting Oregon creditors of an Oregon debtor.

In Oregon, a contractual choice of law provision should be given effect, unless (a) the chosen state has no substantial relationship to the transaction, and there is no reasonable basis for the choice, or (b) the law of the chosen state is contrary to a fundamental policy of the forum state. *Young v. Mobil Oil Corp.*, 85 Or.App. 64, 68, 735 P.2d 654, 656.

The choice of law provision of the Plan clears the first hurdle under this test. Colorado has reasonable connections to the parties. US West has operations in several states, and has its corporate headquarters in Colorado. The Plan is administered there. There is a reasonable basis for selecting a single body of state law to interpret questions that may arise under the Plan, and selecting the headquarters state for that purpose.

For the second hurdle, the court must apply the choice of law provision unless the foreign law violates a fundamental policy of the forum state. Restatement (Second) of Conflict of Laws, § 187 comment g, defines a "fundamental policy" as "a substantial one ... [A] fundamental policy may be embodied in a statute which makes one of more kinds of contracts illegal ...". Oregon requires that public policy be clear and "overpowering" before a court will interfere with the parties' freedom to contract. *Young*, 85 Or.App. at 69, 735 P.2d at 657.

Appellees do not point to, nor have I found, a fundamental policy that would be violated by applying Colorado's spendthrift trust law. US West points to a 1987 amendment of O.R.S. 23.170 as an expression of Oregon's public policy. That statute, as amended, reads:

a retirement plan shall be conclusively presumed to be a valid spendthrift trust under these statutes and the common law of this state, whether or not the retirement plan is self-settled, and a beneficiary's interest in a retirement plan shall be exempt ... from execution and all other process, mesne or final.

As appellees note, this 1987 amendment occurred after the debtors filed for bankruptcy. Section 522(b)(2)(A) of the Bankruptcy Code states that exemptions under state or local law are determined as of the date the bankruptcy petition is filed. I do not rely on this amendment to define a bankruptcy exemption, but use it only as a statement of current Oregon public policy protecting spendthrift trusts for retirement plans. There is no overpowering evidence of a policy to the contrary. Oregon law would give effect to the parties' choice of Colorado law.

The Bankruptcy Appeals Panel in *Kincaid*, however, held that bankruptcy exemption laws of the forum apply, even if the forum's exemptions differ materially from exemption rights under the law of the place where the contract was made, performed, or where the cause of action arose. 96 Bankr. at 1019 n. 2 (citing 31 Am.Jur.2d *Exemptions*, § 14, at 342 (1967)). *Kincaid* is distinguishable because no applicable state would have recognized the retirement plan as a spendthrift trust. Here, Colorado law applies, and as I discuss below, Colorado would recognize the 401(k) plan as a spendthrift trust.

B. *Colorado Spendthrift Trust Law*

Spendthrift trusts are valid in Colorado. *Brasser v. Hutchison*, 37 Colo.App. 528, 549 P.2d 801 (1976). Colorado relies on Restatement (Second) of Trusts, § 152(2) (1959), which defines a spendthrift trust as

one which by its terms restrains the voluntary or involuntary transfer of the beneficiary's interest. *Alagna,* 107 B.R. at 308.

Of the three characteristics that define a valid spendthrift trust under Colorado law, two are not in dispute. The Plan contains a strong antialienation provision, and the beneficiaries of the trust accounts have limited control over the funds. The only remaining question is whether these Plan accounts are self-settled trusts.

*In re Matteson,* 58 B.R. 909 (Bankr.D. Colo.1986) is helpful in determining Colorado law on this question. In *Matteson,* the debtor had a ERISA pension plan with antialienation provisions similar to US West's Plan. The *Matteson* plan provided for both mandatory employer contributions and voluntary employee contributions. The Bankruptcy Court held that although Matteson was the beneficiary of the plan, he was not the settlor. 58 B.R. at 911. Therefore, the money in Matteson's 401(a) pension plan was not property of the bankruptcy estate. *Matteson* remains good law in Colorado. *See, e.g., Alagna,* 107 B.R. at 308; *In re Toner,* 105 B.R. 978, 980 (Bankr.D.Colo. 1989).

■ It is not a significant distinction that the debtor in *Matteson* had a 401(a) account, and the debtors here have 401(k) accounts. The funds in a 401(a) account are paid directly to the employee, as the employee pays current income tax on that money. In a 401(k) account, the employee pays tax on withdrawal of the funds. Because 401(k) account funds are "before tax" dollars, it is even clearer that the employer is settlor of the trust, than with a 401(a) plan. The employee never controls the funds in a 401(k) account, not even to pay current taxes.

The 401(k) pension accounts in US West's Plan are valid spendthrift trusts in Colorado, and the antialienation provisions are valid against the bankruptcy trustee. In light of my conclusions, I need not address any of the other issues raised on appeal.

## CONCLUSION

The antialienation provisions of ERISA and the IRC are not "applicable nonbankruptcy law" under § 541(c)(2), sufficient to exclude ERISA qualified pension plans from a bankruptcy estate. State spendthrift trust law is not preempted by ERISA in a bankruptcy proceeding. Oregon choice of law rules control in determining which state law applies. Oregon law would enforce the parties choice of Colorado law. Finally, Colorado law recognizes the 401(k) plans as valid spendthrift trusts, and therefore excluded from the bankruptcy estate. I reverse the Bankruptcy Court.